**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GARNETT LEE BRISCOE, | : | |
| | : | Civil Action No. 08-1697 (NLH) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MICHELLE RICCI, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

Petitioner <u>pro se</u>
Garnett Lee Briscoe
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

Counsel for Respondents
Roseann A. Finn
Assistant Prosecutor
Camden County Pros. Office
25 North Fifth Street
Camden, New Jersey 08102

**HILLMAN**, District Judge

Petitioner Garnett Lee Briscoe, a prisoner currently confined at New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents are Administrator Michelle Ricci and the Attorney General of New Jersey.

For the reasons stated herein, the Petition must be denied.

I.   <u>BACKGROUND</u>

A.   <u>Factual Background</u>

The relevant facts are not in dispute.

On December 31, 1997, the victim Lisa Choice was in her apartment with several friends and family members.  Choice was in the bathroom, having just finished a shower.  At about 9:15 p.m., Petitioner arrived, a few minutes late to take Choice's son to a skating party.  Petitioner went up to the bathroom and, after a brief argument with Choice, drew a handgun and shot Choice several times, killing her.  Choice was naked and unarmed at the time she was shot.

After shooting and killing Choice, Petitioner fled in his automobile.  A short while later, a police officer pursued Petitioner into Camden, where Petitioner exited his vehicle and ran into a cemetery.  The police officer ran after Petitioner, identifying himself and directing Petitioner to stop.  Petitioner responded by firing his handgun at the officer, who returned fire.  Neither person was hit by the gunfire and the police officer arrested Petitioner.

B.   <u>Procedural History</u>

On December 23, 1998, the Camden County Grand Jury returned Indictment 4323-12-98 charging Petitioner with murder in violation of N.J.S.A. 2C:11-3a(1) and (2) (count one); attempted murder in violation of N.J.S.A. 2C:5-1/2C:11-3a(1) and (2) (count

2

two); second degree aggravated assault in violation of N.J.S.A. 2C:12-1b(1) (count three); second degree eluding in violation of N.J.S.A. 2C:29-2b (count four); third degree hindering apprehension in violation of N.J.S.A. 2C:29-4a (count five); possession of a weapon for an unlawful purpose in violation of N.J.S.A. 2C:39-4a (count six); and unlawful possession of a weapon in violation of N.J.S.A. 2C:39-5b (count seven).

On January 24, 2000, Petitioner appeared in the Superior Court of New Jersey, Law Division, Camden County and, pursuant to a plea agreement, pleaded guilty to the two counts of an amended indictment, specifically, to one count of aggravated manslaughter in violation of N.J.S.A. 2C:11-4a (amended count one) and to second-degree aggravated assault (count three).

The plea agreement provided that the length of the sentence would be at the discretion of the court.  The maximum potential sentence was described, with respect to count one, as 30 years' imprisonment with 25 years, six months, and two days without parole, because the offense fell within the 85 percent rule of the No Early Release Act ("NERA"), N.J.S.A. 2C:43-7.2.  The maximum potential sentence was described, with respect to count three, as a consecutive ten years' imprisonment with eight years, six months, and two days without parole, again because the offense fell within the 85 percent rule of the NERA. Accordingly, the aggregate potential maximum sentence that could

be imposed under the plea agreement was 40 years' imprisonment,
34 years without parole.  The state reserved the right to speak
at sentencing and ask for the maximum sentence.

At sentencing on March 17, 2000, the court imposed
consecutive maximum sentences under the N.E.R.A., for a total of
40 years' imprisonment, 34 years without parole.  Relying upon
information derived from Petitioner and other sources, the
sentencing court found that several aggravating factors applied,
and used those factors to deviate upward from the presumptive
base sentence to the maximum sentence.  Petitioner appealed on
the grounds that:

> because he was not informed prior to accepting the plea
> agreement that he would be waiving his right to have
> the jury determine the N.E.R.A.'s application beyond a
> reasonable doubt; and, because the Act was imposed by
> the sentencing judge without having a jury consider its
> applicability to his case, and finally, because he was
> informed that he would be sentenced to the N.E.R.A. if
> convicted of murder and receive 63 years, the sentence
> and application of N.E.R.A. is illegal.

(Resp. Ex. Ra5-2, Appellant's [Pro Se] Letter Brief, 6 (footnote
omitted).)  On May 24, 2004, after oral argument (limited to the
issue of whether the sentence was excessive) and without opinion,
the Superior Court of New Jersey, Appellate Division, affirmed
the sentence.  On October 14, 2004, the Supreme Court of New
Jersey denied certification.  State v. Briscoe, 182 N.J. 141
(2004).  Petitioner did not file a petition for writ of
certiorari with the United States Supreme Court.

On November 24, 2004, Petitioner filed with the trial court his state petition for post-conviction relief.  Petitioner asserted that trial and appellate counsel were constitutionally ineffective for having failed to raise the alleged illegality of Petitioner's sentence.  Specifically, Petitioner asserted that, at the time of the offenses, the N.E.R.A. applied to certain "violent" crimes, defined as "any crime in which the actor causes death, causes serious bodily injury, or uses or threatens the immediate use of a deadly weapon."  See N.J.S.A. 2C:43-7.2a, d, e (2000).  Later, the New Jersey Legislature amended N.E.R.A., specifically enumerating crimes to which the N.E.R.A. applied, then including aggravated manslaughter or manslaughter and aggravated assault.  N.J.S.A. 2C:43-7.2d (effective June 29, 2001).  Petitioner contended that, under Apprendi v. New Jersey, 530 U.S. 466 (2000), the factual predicate for an N.E.R.A. sentence, as of the time of Petitioner's offense and sentencing, must have been found by a jury under the "beyond a reasonable doubt" standard.  Petitioner contended that his trial and appellate counsel were constitutionally ineffective, because they failed to raise this issue.

Following oral argument, the trial court denied relief on June 23, 2006, noting that there was no ineffective assistance of counsel as the plea agreement (which explicitly provided for an N.E.R.A. sentence) resulted from a negotiated reduction in

5

charges from first-degree murder to aggravated manslaughter.  On

November 8, 2007, without discussion, the Appellate Division

affirmed the denial of relief.  State v. Briscoe, 2007 WL 3287445

(N.J.Super. App. Div. Nov. 8, 2007).  On February 21, 2008, the

Supreme Court of New Jersey denied certification.  State v.

Briscoe, 194 N.J. 272 (2008).

This Petition timely followed.  Petitioner asserts the

following grounds for relief:

> A.   Ground One: Petitioner's sentence is invalid
> because it is contrary to clearly established federal
> and state law as it is illegal and not only illegal but
> violates the Ex Post Facto Clause of both New Jersey
> and the United States, and violates the 5th and 14th
> Amends. ...
>
> B.   Ground Two: Petitioner will raise ineffective
> assistance of counsel of both trial and appellate
> counsel for failing to adequately address Petitioner's
> illegal sentence and by allowing the Petitioner to be
> sentenced beyond the statutory range for his offense.
> ...
>
> C.   Petitioner should be granted an evidentiary
> hearing to established the facts why trial and
> appellate counsel's [sic] were aware of clearly
> established state and federal law concerning the (NERA)
> & its applicability to murder & failed to argue the
> merits.

(Petition, ¶ 12.)

Respondents have answered asserting that the Petition should

be dismissed as a "mixed" petition containing both exhausted and

unexhausted claims, see, e.g., Rose v. Lundy, 455 U.S. 509

(1982), or, in the alternative, that the Petition should be

denied on the merits.  Petitioner has not replied.  This matter is now ready for determination.

## II.  28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

> With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determinated by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent."

Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).  A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter).  Id. at 407-09.  To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See

Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent."  Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of

9

tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998);
Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989);
United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969),
cert. denied, 399 U.S. 912 (1970).

III.  ANALYSIS

A.   The Sentencing Claims

A federal court's ability to review state sentences is
limited to challenges based upon "proscribed federal grounds such
as being cruel and unusual, racially or ethnically motivated, or
enhanced by indigencies."  See Grecco v. O'Lone, 661, F.Supp.
408, 415 (D.N.J. 1987) (citation omitted).  Thus, a challenge to
a state court's discretion at sentencing is not reviewable in a
federal habeas proceeding unless it violates a separate federal
constitutional limitation.  See Pringle v. Court of Common Pleas,
744 F.2d 297, 300 (3d Cir. 1984).  See also 28 U.S.C. § 2254(a);
Estelle v. McGuire, 502 U.S. 62, 67 (1991); Lewis v. Jeffers, 497
U.S. 764, 780 (1990).

Here, Petitioner asserts two challenges to his sentences:
(1) that it was not proper to impose NERA and the maximum
sentences, as those sentences were imposed based upon judicial
fact-finding rather than fact-finding by a jury, beyond a
reasonable doubt, and (2) that imposition of NERA sentences

10

violated the Ex Post Facto Clause.[1]  Petitioner is not entitled
to relief on either claim.

1.   Sentences Based Upon Judicial Fact-Finding

Petitioner contends that the trial judge improperly
sentenced him to terms greater than the presumptive term for his
crimes of conviction,[2] in violation of the rule announced in
Blakely v. Washington, 542 U.S. 296 (2004).  The state courts
rejected this claim.

In Apprendi v. New Jersey, 530 U.S. 466, 471, 490 (2000),
pursuant to the Fourteenth Amendment right to due process,
coupled with the Sixth Amendment right to trial by jury, the
Supreme Court held that "[o]ther than the fact of a prior
conviction, any fact that increases the penalty for a crime
beyond the prescribed statutory maximum must be submitted to a
jury, and proved beyond a reasonable doubt."  In Blakely v.
Washington, 542 U.S. 296 (2004), the Supreme Court overturned a
sentence imposed under Washington state's sentencing system,
explaining that "the relevant statutory maximum is not the

---

[1] Petitioner also contends that the NERA does not apply to
murder convictions.  See State v. Manzie, 168 N.J. 113 (2001).
Petitioner, however, was not convicted of murder.  Thus, this
allegation does not entitle Petitioner to any relief here.

[2] Petitioner was sentenced to 30 years' imprisonment on the
aggravated manslaughter charge and to 10 years' imprisonment on
the aggravated assault charge.  The presumptive sentences for
those charges were 20 years' and seven years' imprisonment,
respectively.  See N.J.S.A. 2C:44-1f(1)(a), (c).

maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings."  542 U.S. at 302 (internal quotations omitted).  More specifically, "the 'statutory maximum' for <u>Apprendi</u> purposes is the maximum sentence a judge may impose <u>solely on the basis of the facts reflected in the jury verdict or admitted by the defendant</u>."  542 U.S. at 303 (emphasis in original) (citations omitted).  Most recently, in <u>United States v. Booker</u>, 543 U.S. 220 (2005), the Supreme Court applied the rule of <u>Apprendi</u> to the United States Sentencing Guidelines, finding the Guidelines unconstitutional, and rendering them merely advisory, rather than mandatory.

In <u>State v. Natale</u>, 184 N.J. 458 (N.J. 2005), the Supreme Court of New Jersey evaluated the constitutionality of the New Jersey sentencing scheme in light of the <u>Apprendi</u> line of cases.

> Our Code provisions make clear that, before any judicial factfinding, the maximum sentence that can be imposed based on a jury verdict or guilty plea is the presumptive term.  Accordingly, the "statutory maximum" for <u>Blakely</u> and <u>Booker</u> purposes is the presumptive sentence.

<u>Natale</u>, 184 N.J. at 484.  Because the Code's system allows for sentencing beyond the statutory maximum presumptive term, the Supreme Court of New Jersey found the state sentencing system unconstitutional and determined that the appropriate remedy would be to follow the lead of <u>Booker</u> and abolish the presumptive terms.  "Without presumptive terms, the 'statutory maximum'

authorized by the jury verdict or the facts admitted by a defendant at his guilty plea is the top of the sentencing range for the crime charged, e.g., ten years for a second-degree offense." Natale, 184 N.J. at 487 (citation omitted).  The Supreme Court of New Jersey held that the rule it announced in Natale was applicable retroactively only to cases in the direct appeal pipeline as of the date of that decision, August 2, 2005. Natale, 184 N.J. at 494.  Petitioner had already concluded his direct appeals by the date of the Natale decision; thus, the Natale decision did not entitle him to relief.

Similarly, the Court of Appeals for the Third Circuit generally has held that the rules announced in the Apprendi line of cases are not applicable retroactively to cases on federal collateral review.  See generally In re Olopade, 403 F.3d 159 (3d Cir. 2005) (finding that the decision of the Supreme Court in Booker does not apply retroactively to cases on collateral review); United States v. Swinton, 333 F.3d 481 (3d Cir.), cert. denied, 540 U.S. 977 (2003) (holding that Apprendi does not apply retroactively to cases on collateral review); In re Turner, 267 F.3d 225 (3d Cir. 2001) (holding that Apprendi does not apply retroactively to cases on collateral review).  See also United States v. Price, 400 F.3d 844, 849 (10th Cir.), cert. denied, 126 S.Ct. 731 (2005) (Blakely does not apply retroactively to cases on collateral review).

13

Here, in determining the length of sentence to be imposed, the sentencing court found several aggravating factors including: the nature and circumstances of the offense and whether it was committed in an especially heinous, cruel, or depraved manner, the risk that the defendant will commit another offense, the extent of the defendant's prior criminal record, and the need to deter the defendant and others from violating the law.  In finding these aggravating factors, the court relied upon facts admitted by Petitioner, including that the victim's son was present in the house during the murder and that another person was present in the room during the murder, and could have been injured.  The court also relied upon Petitioner's prior criminal record, which had escalated in violence over a period of years. These facts were reflected in the pre-sentence report, which Petitioner did not dispute when given the opportunity at sentencing.  In determining the applicability of the NERA, the court relief upon admitted facts that the defendant "cause[d] death" or "use[d] ... a deadly weapon."  Thus, the sentences were imposed consistently with the rules of the <u>Apprendi</u> line of cases.  To the extent it could be argued that there was any judicial fact-finding, Petitioner specifically agreed in the negotiated plea agreement that he could be sentenced, at the

14

court's discretion, up to the maximum sentence for each count.[3] Finally, Petitioner is not entitled to retroactive relief in this federal collateral proceeding.

The Appellate Division's decision is neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.  Petitioner is not entitled to relief on this claim.

2.   The Ex Post Facto Claim

The core concerns of the Ex Post Facto Clause were expounded upon by Justice Chase in 1798.

> 1st.  Every law that makes an action done before the passing of the law, and which was <u>innocent</u> when done, criminal; and punishes such action.  2d.  Every law that <u>aggravates</u> a <u>crime</u>, or makes it <u>greater</u> than it was, when committed.  3d.  Every law that <u>changes the punishment</u>, and inflicts a <u>greater punishment</u>, than the law annexed to the crime, when committed.  4th.  Every law that alters the <u>legal</u> rules of <u>evidence</u>, and receives less, or different, testimony, than the law required at the time of the commission of the offence, <u>in order to convict the offender</u>.

---

[3] <u>Cf.</u> <u>Blakely</u>, 542 U.S. at 310 ("But nothing prevents a defendant from waiving his <u>Apprendi</u> rights. When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding.  If appropriate waivers are procured, States may continue to offer judicial factfinding as a matter of course to all defendants who plead guilty. ...  We do not understand how <u>Apprendi</u> can possibly work to the detriment of those who are free, if they think its costs outweigh its benefits, to render it inapplicable." (citations and footnote omitted)).

<u>Calder v. Bull</u>, 3 Dall. 386, 390 (1798) (opinion of Chase, J., emphasis in original) (quoted with approval in <u>Collins v. Youngblood</u>, 497 U.S. 37, 41-42 (1990)).

Petitioner was sentenced in accordance with the state law in effect at the time of his sentence.  There is no ex post facto violation, here.  Petitioner is not entitled to relief on this claim.

B.   <u>The Ineffective Assistance of Counsel Claim</u>

Plaintiff alleges that trial and appellate counsel were constitutionally ineffective because they failed to make the sentencing arguments outlined above.  The state courts rejected this argument based, in part, upon the fact that the negotiated plea agreement reflected Plaintiff's maximum sentencing exposure, at the discretion of the sentencing court.

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI. The right to counsel is "the right to <u>effective</u> assistance of counsel."  <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but

16

for counsel's unprofessional errors, the outcome would have been
different.  Strickland v. Washington, 466 U.S. 668, 687, 694
(1984).  A "reasonable probability" is "a probability sufficient
to undermine confidence in the outcome."  Strickland at 694.
Counsel's errors must have been "so serious as to deprive the
defendant of a fair trial, a trial whose result is reliable."
Id. at 687.

The performance and prejudice prongs of Strickland may be
addressed in either order, and "[i]f it is easier to dispose of
an ineffectiveness claim on the ground of lack of sufficient
prejudice ... that course should be followed."  Id. at 697.

There is "a strong presumption that counsel's conduct falls
within the wide range of reasonable professional assistance."
Strickland, 466 U.S. at 689.  As a general matter, strategic
choices made by counsel after a thorough investigation of the
facts and law are "virtually unchallengeable," though strategic
choices "made after less than complete investigation are
reasonable precisely to the extent that reasonable professional
judgments support the limitations on investigation."  Id. at 690-
91.  If counsel has been deficient in any way, however, the
habeas court must determine whether the cumulative effect of
counsel's errors prejudiced the defendant within the meaning of
Strickland.  See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d
Cir. 1996).

17

The Supreme Court has held that the Due Process Clause of
the Fourteenth Amendment guarantees a defendant the effective
assistance of counsel on a first direct appeal as of right.
Evitts v. Lucey, 469 U.S. 387 (1985).  The Strickland standard
for effective assistance of counsel applies to appellate counsel.
See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004).
Appellate counsel does not have a duty to advance every
nonfrivolous argument that could be made, see Jones v. Barnes,
463 U.S. 745, 754 (1983), but a petitioner may establish that
appellate counsel was constitutionally ineffective "if he shows
that counsel omitted significant and obvious issues while
pursuing issues that were clearly and significantly weaker," Mayo
v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

Petitioner has not established ineffective assistance of
counsel.  Certainly, there is no error in the NERA aspect of the
sentence.  In addition, to the extent the Petition could be
construed as asserting an ineffective assistance claim based upon
the imposition of the maximum (rather than the presumptive)
sentences, he has failed to establish either that there was a
violation of the Apprendi line of cases or that there is a
reasonable probability that, but for counsel's alleged errors,
the outcome would have been different.  For example, Petitioner
was sentenced before the date of the Apprendi decision; and
Petitioner has not established that there is a reasonable

18

probability that the outcome of plea negotiations would have been favorable to him if his counsel had argued that his maximum exposure should be 27 years, cumulatively, rather than 40. Moreover, as Petitioner's appeal was concluded before the date of the <u>Natale</u> decision, he cannot establish the likelihood that raising such an argument on appeal would have resulted in a reduced sentence.  Moreover, Petitioner agreed, in the plea agreement, to his exposure up to the maximum sentence, at the discretion of the sentencing judge.  Finally, as noted by the state courts, Petitioner's maximum sentencing exposure was reduced as a result of the plea negotiations.

The state PCR court correctly identified the applicable Supreme Court precedent.  The decision of the state courts was neither contrary to, nor an unreasonable application of the <u>Strickland</u> standard, nor was the decision of the state court based on an unreasonable determination of the facts in light of the evidence presented.  Petitioner is not entitled to relief on this claim.

C.   <u>The Request for a Hearing</u>

Under 28 U.S.C. § 2254(e), if a habeas petitioner has failed to develop the factual basis of a claim in State court proceedings, a federal court shall not hold an evidentiary hearing on the claim unless the applicant shows that:

(A) the claim relies on --

19

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Petitioner has failed to meet the statutory requirements for a federal evidentiary hearing.  Moreover, he has failed to explain what facts he needs to develop or the manner in which an evidentiary hearing would establish his claim.  The facts necessary to determination of Petitioner's claims can be fully discerned from the available state court record.  This request will be denied.

## IV.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate

to deserve encouragement to proceed further." <u>Miller-El v.</u>
<u>Cockrell</u>, 537 U.S. 322, 327 (2003).

Petitioner has failed to make a substantial showing of the
denial of a constitutional right.  No certificate of
appealability shall issue.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition must be
denied.  An appropriate order follows.


At Camden, New Jersey                 s/Noel L. Hillman
                                     Noel L. Hillman
                                     United States District Judge

Dated:  April 23, 2009